## Case No. 13,059.

### SMITH et al. v. HIGGINS et al.

[1 Fish. Pat. Cas. 537.][1]

Circuit Court, S. D. New York. Dec., 1859.

PATENTS—ARRANGEMENT AND COMBINATION— PRINCIPLE OF PATENT.

1. In order to constitute an infringement, it is not necessary that the arrangement and combination of the party charged with the infringement should be the same to the eye as the patented invention. If they embody the ideas of the patentee, and the machinery of the defendant operates by such adoption and appropriation, then, though the arrangement may be apparently different, in reality and in judgment of law an infringement exists.

[Cited in brief in Tillotson v. Ramsay, 51 Vt. 311.]

2. Hence, it will not only be proper, but essential, that the jury should look into the arrangement and operation of the machinery used by the defendant, for the purpose of ascertaining whether or not it embodies within it the principle of the patentee; whether, or not, its successful operation is attributable to such appropriation. If it does, then it is an infringement. If it does not, then there has been no infringement.

This was an action on the case [by Alexander Smith and Jonathan Smith against Alvin Higgins and others] tried by Mr. Justice NELSON and a jury, and brought to recover damages for the infringement of letters patent [No. 7,446] granted to Alexander Smith, June 18, 1850, and reissued May 11, 1852 [No. 217], for a new and useful "apparatus for parti-coloring yarn," an undivided half of which was assigned to Jonathan Smith.

The claims of the reissued patent were as follows: "What I claim as my invention, and desire to secure by letters patent, is the method substantially as specified, of parti-coloring yarns that have been reeled, by direct and free immersion by means of frames carrying the reeled yarns, and combined with the vat containing the dyeing liquor, by means of machinery adapted to let down and draw up said frame, and measure the extent of immersion substantially as set forth. I also claim connecting one or both of the reels in each frame by means of slides, to admit of moving the reels from contact with the yarns, while in the process of dyeing, substantially as specified."

Chas. M. Keller and Samuel Blatchford, for plaintiffs.

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

George Gifford, for defendants.

NELSON, Circuit Justice (charging jury). The patent in this case was originally granted to Alexander Smith, June 18, 1850. On December 10, of the same year, an undivided half of the patent was assigned to Jonathan Smith. The suit is in the name of the two. The patent was surrendered and reissued with an amended specification on May 11, 1852. The suit is founded upon this reissued patent and amended specification.

The first question to be considered by the court and jury is, what is the invention of the patentee? This we must ascertain and settle in order to be able to determine intelligibly whether or not it has been appropriated or infringed by the defendants. The invention is described by the patentee as a new and useful apparatus for parti-coloring yarn.

It is therefore a patent for machinery—for the means to be used in this work. The patentee then refers to the modes of parti-coloring in use at the time he made his invention; the first being by printing, and the second by dipping the skeins into a dye-vat, the part not to be dyed being clamped, or tied, or wrapped around, to prevent the access of the dye.

He then states that these methods in previous use were imperfect, the printing not admitting of permanent colors, besides requiring complex machinery, and the dyeing by clamping, tying, etc., being unsuccessful on account of the access of the dye to the parts sought to be excluded. He then speaks of the nature of his improvement, which he says consists of parti-coloring yarns that have been reeled, by means of direct immersion in the dye, by the use of movable frames, adapted to receive and hold the skeins at they are arranged upon a reel, and so combined with the dye-vat that they will permit the yarn to be let down to a determinate distance in the dye. There is then a particular description of the machinery used in this process, and finally, the more material part of the specification, particularly when we are inquiring as to the thing invented or discovered—the claim. What the patentee claims to have secured is the method substantially as described, of parti-coloring yarns which have been reeled, by direct and free immersion, by means of frames carrying the reeled yarns, combined with the dyeing-vat by machinery adapted to let down and draw up the frame and measure the extent of the immersion. The reel on which the yarn is reeled (which was exhibited in court) is not a part of the combination, and as regards this question of novelty in the combination described by the patentee, and in which his invention consists, may be laid out of view. The thing invented, then, is this: The horizontal frame carrying the reeled yarns combined with the dyeing-vat by machinery adapted to let down and draw up this frame and measure the ex-

tent of the immersion, or the extent of the line of dyeing upon the yarn. In other words, the thing discovered is the combination of the horizontal frame carrying the reeled yarns with the dyeing-vat by machinery—which must always be kept in view as very important—which lets down the frame carrying the yarn, and draws it up, and at the same time measures the line of yarn to be dyed.

Now, this being the thing invented—the improvement patented—the next question is, is it new and useful? It must be both in order to constitute a valid patent. The utility of the arrangement and combination I have not understood to be contested by the learned counsel for the defendants.

As to the novelty of the arrangement and combination, there has been introduced in the course of the trial, intending to bear upon this question, as well as upon the question of infringement, the previous printing apparatus, the clamping process and apparatus, and the methods of Graham, Stevenson, Whittock, and that of Kerr, one of the witnesses who testified on the part of the defendants.

Now, the question of novelty is not whether free immersion has been before used for dyeing parti-colored yarns; but whether this dyeing of parti-colored yarns by free immersion was done previous to the date of the invention of the patentee, by an arrangement and combination of machinery like that described in his patent. This is not a patent for the discovery of the idea of dyeing parti-colored yarns by immersion in the dye, but it is for an arrangement and combination of machinery, as a means to be used in dyeing parti-colored yarns by immersion in the dye. In order, therefore, to disprove the novelty of the invention, it must be shown that these previous modes used practically in dyeing parti-colored yarns by immersion, or otherwise, embraced within them this combination and arrangement of the machinery described in the patent. If it were done by modes and processes not embracing this combination and arrangement, then such previous use would not disprove the novelty of the plaintiffs' invention.

On this point, therefore—the question of novelty—it will be your duty to look into these old modes of parti-coloring yarn by immersion, or otherwise, in the dye, and say whether they contain the special combination and arrangement of the machinery described and used by the plaintiffs.

If you should arrive at a conclusion in favor of the plaintiffs as to the novelty or utility of their improvement, the next question will be as to the alleged infringement by the defendants in the adoption of machinery whereby yarn is parti-colored by immersion. That question will depend upon the fact whether or not the arrangement of the machinery used by the defendants in dyeing yarn embraces the combination of the

plaintiffs; in other words, whether the defendants' mode and machinery embodies within it the new ideas of the patentee; whether or not they have appropriated the ideas which lie at the foundation of the plaintiffs' improvement or discovery.

In order to constitute an infringement, it is not necessary that the arrangement and combination of the party charged with the infringement should be the same to the eye, but in point of fact. If they embody the ideas of the patentee, and the machinery of the defendants operates by such adoption and appropriation, then, though the arrangement may be apparently different, in reality and in judgment of law an infringement exists. Hence, it will be not only proper, but essential, that the jury should look into the arrangement and operation of the machinery used by the defendants for the purpose of ascertaining whether or not it embodies within it the principle of the patentee; whether or not its successful operation is attributable to such appropriation. If it does, then it is an infringement. If it does not, then there has been no infringement.

It has been insisted by the learned counsel for the defendants that they do not use the reeled yarn, or rather the yarns on a reel, as is done by the plaintiffs; and hence it is insisted that, in this respect, the defendants' arrangement or combination of machinery differs from that of the plaintiffs'. It is true, however, that the combination and arrangement of the machinery of the plaintiffs is useless, and would not be patentable without yarn to be operated upon in the process of dyeing; and in order to make out an infringement, it must appear that the defendants not only used the combination of the plaintiffs, but that it is used for dyeing by letting down and taking up the reeled yarn into and out of the vat, and measuring the extent of the immersion at the time.

I will state this proposition again, as it is undoubtedly important. I have said that the combination and arrangement of the plaintiffs' machinery is useless, and would not be patentable without yarn to be operated upon in the dyeing process. The invention is the combination for the purpose of dyeing by immersion, and the machinery which is employed to effectuate this process. It must therefore appear, in order to constitute an infringement, that the defendants use this combination and arrangement for the purpose of dyeing by immersion, by means of machinery which lets down the yarn into the dye; that they use the combination of machinery which effects, or appears to effect this, and at the same time measures the extent of the dyeing. Whether or not the yarn to be dyed is on a reel, like the plaintiffs', is not material. If the yarn is so arranged as to be acted upon by the plaintiffs' combination, and is so acted upon by the defendants' arrangement that it may be let down into the dye and taken up, and at the same time measure the extent of the immersion, then an infringement exists. There would then be an embodiment of the ideas of the patentee in the arrangement or combination of the machinery of the defendants, and an appropriation of the improvement of the patentee. Gentlemen, this branch of the case, the question of infringement, is a question of fact which, under the views of the law which I have endeavored to explain to you, must be examined and determined for yourselves. Undoubtedly, before the plaintiffs are entitled to recover, they must have established to your reasonable satisfaction that their new mode, method, combination, arrangement of machinery for the purpose of dyeing parti-colored yarns, and the ideas involved and embodied in this new arrangement and combination which enabled them to work out their improvement is a useful one; that these are substantially, practically involved and embodied in the defendants' arrangement and operation of their machinery. If you find these there, although the form may be different to the eye—if you find the essence of the plaintiffs' arrangement, the practice and operation of it embodied within the defendants', then, in judgment of law, there is an infringement. This is a question of act, which it is your province to determine.

The remaining question in the case is the question of damages, which has been presented by the counsel for the plaintiffs. Upon this question the general rule is, in case of an infringement or appropriation of his invention by another without his license, the patentee or the assignee, as the case may be, is entitled to the actual damages, which he has sustained by reason of this infringement. It is often, indeed, almost always, an exceedingly difficult question to arrive at, upon any certain or satisfactory data. The theory, or the principle in respect to the damages, is that a third person who adopts, appropriates, or uses the improvement of another, interferes with his custom, his monopoly, or rather property (for it is not a monopoly, being the fruits of his own mind), and affects the benefits which he would otherwise be entitled to; and the jury should look into the case with a view to ascertain the actual damage which the patentee, under such circumstances, has sustained. The rule of law excludes any exaggerated or vindictive damage, which is sometimes allowed in cases of willful trespass. That rule of damage has no application in this case.

In this case, one view probably to be taken upon the question of damages would be this: the benefits and advantages, whatever they may be, if there are any, derived in the use of the plaintiffs' improvement over the old modes practiced and in use; and this is the useful result, if any, consequent upon the new invention over old modes. If it can be shown that there are benefits and advantages derived by the use of the new mode over

the old, these are such as are to be taken into consideration upon the question of damages.

You have heard the testimony which has been offered. I shall not go over or call attention particularly to it. These estimates and opinions are not always reliable or very certain. But still they are competent and admissible on the question of damages, and proper to be taken into account by the jury in attempting to arrive at the actual damages which the plaintiffs have sustained. This is also a question of fact which belongs to the jury, and with which I do not desire to interfere.

Mr. Gifford then submitted the following points, to which the court assented:

First. That it is for the jury to decide whether or not the defendants' clamp-frame is or is not combined by machinery with the vat.

Second. That unless the jury find that the clamp-frame of the defendants is combined with the vat by machinery, there is no infringement.

Third. That unless the jury find that in the use of such combination the machinery measures in its use the extent of the immersion, there is no infringement.

The jury disagreed.

[For another trial of this case, in which judgment was rendered for defendants, with costs, see Case No. 13,060.]